# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| Delaware River & Bay Authority, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | C.A. No.: N18A-08-002 SKR |
| | ) | |
| Frank Minor, | ) | |
| | ) | |
| | ) | |
| Appellee. | ) | |

Submitted: April 15, 2019
Decided: June 13, 2019

*Upon Appeal from the Decision of the Unemployment Insurance Appeal Board*:
**REVERSED AND REMANDED**.

Barry M. Willoughby, Esq., Lauren E.M. Russel, Esq., Young Conaway Stargatt & Taylor, LLP, Attorneys for Appellant.

Frank Minor, *pro se*, Appellee.

**Rennie, J.**

## MEMORANDUM OPINION AND ORDER

Before the Court is an appeal from the Unemployment Insurance Appeal Board's (the "Board") decision finding that appellee Frank Minor ("Minor") is eligible for the receipt of unemployment benefits. The parties dispute whether Minor was a "major nontenured policymaking" employee of appellant Delaware

River & Bay Authority (the "Authority") before he was terminated. The Board agreed with Minor that he was not and was therefore eligible for unemployment benefits. The Authority contends that Minor's position was both nontenured and involved policymaking duties, and thus it appealed the Board's decision.[1] For the reasons set forth below, the Board's decision is **REVERSED AND REMANDED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Authority

The Authority is a bi-state agency established pursuant to the Delaware-New Jersey Compact (the "Compact"),[2] with the purpose of improving the flow of traffic between the two States and advancing economic growth and development.[3] The Authority is supervised and operated by a Board of Commissioners consisting of twelve members.[4] Six of the Commissioners are residents of and appointed by the State of Delaware, and the remainder are residents of and appointed by the State of New Jersey.[5] Under the Compact, the Commissioners are charged with all of the Authority's property and affairs.[6] To pursue the Authority's stated mission, the

---

[1] Appellant Delaware River & Bay Authority's Opening Brief ("Opening Br.") (Trans. ID. 62467608); Frank Minor's Answering Brief ("Answering Br.") (Trans. ID. 62532676); Appellant Delaware River & Bay Authority's Reply Brief (Trans. ID. 62585423).
[2] The Compact is incorporated into both Delaware and New Jersey's statutes. *See* 17 *Del. C.* § 1701; N.J. Stat. Ann. 32:11E-1.
[3] 17 *Del. C.* § 1701.
[4] *Id.*
[5] *Id.* The Delaware Commissioners are appointed by the Governor with the advice and consent of the Senate. 17 *Del. C.* § 1711.
[6] 17 *Del. C.* § 1701.

Commissioners are granted certain powers including, among others, the power to "appoint or employ such other officers . . . as it may require for the performance of [their] duties" and to determine the terms and conditions of those officers' employment.[7] The Commissioners take actions through resolutions discussed and passed at their meetings.[8]

The Commissioners have passed bylaws[9] (the "Bylaws") to govern the operation of the Authority. The Bylaws authorize the employment of officers, including a Secretary, Executive Director, Deputy Executive Director, Chief Financial Officer, Chief Operations Officer, and Chief Human Resources Officer.[10] The Secretary, Executive Director, Deputy Executive Director, and Chief Financial Officer are appointed and dismissed solely by the Commissioners.[11] By contrast, the employment of other officers, although reviewed and authorized by the Commissioners, is decided by the Executive Director.[12]

The Authority maintains a Personnel Manual (the "Manual"), which defines an employee as "any person employed on a salary or wage" by the Authority.[13]

---

[7] *Id.*
[8] *Id.*
[9] Record on Appeal ("R. on Appeal") 113–139, Bylaws of the Delaware River & Bay Authority (Last Amended May 28, 2008) ("Bylaws").
[10] Bylaws, § 2.1.
[11] *Id.*, § 2.4.
[12] *Id.*, § 2.5.
[13] R. on Appeal 142–216, the Delaware River & Bay Authority Personnel Manual ("Manual") at 12.

Under the Manual, an employee may be classified as "probationary," "permanent full-time," "seasonal," "casual," or "permanent part-time."[14] Specifically, a "permanent full-time" employee is an employee who has "satisfactorily completed the probationary period, and has been accepted into a 12-month position."[15] The Authority provides a tenure for permanent full-time employees who have been employed by the Authority for a minimum of 12 months.[16] The Manual requires all applicants for employment to apply in writing on an Authority Application Form.[17]

## B. Deputy Executive Director

The position of Deputy Executive Director ("DED") was first established through Resolution 04-04 passed by the Commissioners in 2004.[18] The original job description of DED, which was attached to Resolution 04-04, states that the DED is to serve in a "key leadership role," and is responsible for "all Authority-related economic development," all internal and external communications, and all "Authority-wide governance matters."[19] The DED is also responsible for "special

---

[14] *Id.* The Manual was amended on December 19, 2017 to add a new category to the employee classification. This amendment, however, is central to one of the key issues of this case. Whether the amendment is valid, and whether and how it affects the merits of the case, are contentiously disputed. Therefore, the Court here only lists the five categories that had been existing prior to the amendment. The Court will discuss the contents of the amendment later in this Opinion.

[15] *Id.* at 13.

[16] The Manual states that those employees may not be removed from employment except for "good and sufficient cause or reason." *Id.* at 60.

[17] *Id.* at 3.

[18] R. on Appeal 222–28, Resolution 04-04 and Attached Organizational Chart and DED's Job Description.

[19] DED's Job Description, R. on Appeal 224.

4

projects tasked by the Executive Director."[20] The job description also indicated that the DED had seven direct reports in the areas of economic development, communications, and governance.[21] Besides the job description, the Authority's Bylaws, most recently amended in 2008, also delineated the DED's duties. The Bylaws set forth the DED's duties as "manag[ing] and oversee[ing] special projects and other activities as assigned by the Executive Director or by Resolution of the Commissioners."[22]

Historically, there has been an informal expectation and arrangement that the Executive Director will be an appointee of the State of Delaware, and the DED will be an appointee of the State of New Jersey.[23] The position of DED was developed to ensure that New Jersey's interest is equally and sufficiently represented in the Authority.[24] On the other hand, the Authority's former Executive Director, Scott Green, in a 2015 internal investigation, stated that the DED position was the result of "stitching together a number of things people thought were not important including communications, economic development and marketing."[25] Mr. Green

---

[20] *Id.*
[21] *Id.*
[22] Bylaws, § 3.7.
[23] R. on Appeal 376–406, Transcript of Second Appeals Referee Hearing ("Referee Transcript") at 17.
[24] *Id.*
[25] R. on Appeal 334–75, Report of 2015 Internal Investigation ("2015 Investigation") at 29.

5

also commented that the DED "was never a real job," and that it was a "ginned up job to make a political deal."[26]

## C. Minor's Employment with the Authority and Termination

From June 29, 2009 until his termination, effective January 5, 2018, Minor was employed full-time as DED. When Minor was appointed to the DED position in 2009, he had six direct reports.[27] Over the course of Minor's employment, specifically after Scott Green's appointment as Executive Director in April 2012, staff positions that directly reported to Minor were either eliminated or transferred to other sections within the Authority.[28] By the fall of 2014, Minor had only one direct report, who was an administrative assistant.[29]

On December 19, 2017, the Commissioners passed Resolution 17-66, amending the Manual to add a new category, "Board Appointed Officer," to the employee classification section, in addition to the five pre-existing categories of employment.[30] The new category consists of the four positions that are appointed and dismissed solely by the Commissioners as provided in the Bylaws, i.e., Executive Director, DED, Secretary, and Chief Financial Officer.[31] Resolution 17-66 also provides that the Commissioner-appointed officers are not subject to the

---

[26] *Id.*
[27] *Id.* at 27.
[28] *Id.* at 28–29.
[29] *Id.* at 27. No evidence shows that Minor has gained additional direct reports after 2014.
[30] R. on Appeal 217–18, Resolution 17-66.
[31] Manual at 13.

6

tenure policy that is applicable to the permanent full-time employees, and they serve at the pleasure of the Commissioners.[32] On the same day, the Commissioners also passed Resolution 17-67, terminating Minor from the position of DED.[33] The reason given for Minor's termination was that the Commissioners "no longer believe[d] that []Minor [wa]s the individual best suited to serve" in that position.[34] Both Resolutions 17-66 and 17-67 became effective on January 5, 2018.[35]

## D. Stage of the Proceedings

On January 7, 2018, Minor filed a claim for unemployment benefits with the Delaware Department of Labor.[36] After his claim was denied by a Claims Deputy,[37] Minor filed an appeal before an Appeals Referee.[38] The Appeals Referee held two hearings[39] in this matter, and issued a decision affirming the Claims Deputy's denial of benefits.[40] Minor once again appealed, this time before the Unemployment Insurance Appeal Board.[41] On June 20, 2018, the Board held a hearing on Minor's

---

[32] Resolution 17-66.

[33] R. on Appeal 220, Resolution 17-67.

[34] *Id.*

[35] Under the Compact, all resolutions are subject to approval or veto by Governors of each State within 10 business days. 17 *Del. C.* § 1701. Resolutions 17-66 and 17-67 became effective after the expiration of the 10-day veto period.

[36] R. on Appeal 1, Notice of Determination.

[37] *Id.*

[38] R. on Appeal 2–3, Appeal of Denial of Unemployment Benefits.

[39] The first hearing before the Appeals Referee occurred on February 26, 2018. R. on Appeal 5, Notice of First Referee Hearing. Due to a mailing error, the Authority was not notified of that hearing and did not appear. Therefore, the Appeals Referee held a second hearing on April 25, 2018. R. on Appeal 97, Notice of Second Referee Hearing.

[40] R. on Appeal 229–31, Appeals Referee's Decision.

[41] R. on Appeal 416, Appeal of Appeals Referee's Decision.

appeal.[42] On July 13, 2018, the Board issued its decision reversing the Appeals Referee, and found that Minor was not a "major nontenured policymaking" employee and that he was eligible for unemployment benefits.[43] On August 2, 2018, the Authority appealed the Board's decision to this Court.[44] On April 15, 2019, the Court held oral arguments in this appeal.[45]

## II. STANDARD OF REVIEW

This Court has appellate jurisdiction over final agency decisions under 29 *Del. C.* § 10142. On appeal, the Court's review is limited to determining whether the agency's decision is "free from legal error" and supported by "substantial evidence."[46] Questions of law are reviewed *de novo*.[47] Substantial evidence is such

---

[42] R. on Appeal 432–53, Transcript of June 20, 2018 Board Hearing ("Board Transcript").

[43] R. on Appeal 422–28, Unemployment Insurance Appeal Board's July 13, 2018 Decision ("Board Decision").

[44] Notice of Appeal (Trans. ID. 62303543).

[45] April 15, 2019 Superior Court Proceeding Sheet (Trans. ID. 63173452).

[46] *Morrison v. Unemployment Ins. Appeal Bd.*, 2013 WL 5786417, at *3 (Del. Super. Oct. 18, 2013) (internal citations omitted). Minor contends that the Court must defer to an administrative agency's reasonable interpretation of statutes it is empowered to enforce, citing *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) and *Johnson v. Williams*, 728 A.2d 1185 (Del. Super. 1998). Answering Br. at 12–13. The issue in this case is whether Minor's position as DED was, "pursuant to or under the laws of this State," a position designated as a "major nontenured policymaking" position. In the proceedings before the Board, the parties disputed each other's interpretation of the language "pursuant to or under the laws of this State." *See* Board Decision at 4. But that is not an issue raised in this appeal as both parties appear to have accepted the Board's interpretation of that phrase. On appeal, the dispute centers solely on whether the DED position was designated as a "nontenured policymaking" position based on the facts in this case. Therefore, the Court does not have to address the purported deferential standard. Instead, the Court will apply the well-settled "de novo" standard as to legal questions and "substantial evidence" standard as to the Board's factual findings.

[47] *Volk v. Unemployment Ins. Appeal Bd.*, 2016 WL 241379, at *1 (Del. Super. Jan. 13, 2016) (internal citations omitted).

evidence that "a reasonable mind might accept as adequate to support a conclusion."[48] When factual determinations are at issue, the Court must "take due account of the experience and specialized competence of the agency and the purposes of the basic law under which the agency has acted."[49] The Court "does not weigh evidence, determine questions of credibility, or make its own factual findings."[50]

## III. LEGAL ANALYSIS

Title 19, Chapter 33 of the Delaware Code sets forth the legal structure in determining unemployment compensation. It provides, among other things, that certain types of employment are not eligible for unemployment compensation. One of those excluded types of employment, which is at issue in this case, is a position in the employ of a government entity which, under the laws of this State, is designated as a "major nontenured policymaking or advisory position."[51] The issue now before the Court is whether the DED position once held by Minor was designated as a "major nontenured policymaking" position such that Minor is excluded from the receipt of unemployment benefits.

---

[48] *Morrison*, at *3 (internal citations omitted).
[49] 29 *Del. C.* § 10142.
[50] *Morrison*, at *3 (internal citations omitted).
[51] 19 *Del. C.* § 3302(10)(D)(iii)(V).

## A. Nontenured

The Board found that Minor's position as DED was a tenured one. The Court disagrees. The Board acknowledged that Commissioner-appointed officers, such as DED, was excluded from the tenure policy as a result of the amendment to the Manual passed in Resolution 17-66.[52] The Board, however, found that the Manual was amended *after* Minor was terminated.[53] Hence, the Board found that the *post hoc* change discounts the evidentiary value of the amended Manual, as it relates to the nature of Minor's role in the DED position.[54]

The Board's finding that the Manual was amended *after* Minor was terminated misapprehends the facts. Both Resolutions 17-66 and 17-67 were taken up by the Commissioners on the same day at the same Commissioners' meeting. Viewed in a strict chronological order, Resolution 17-66, which authorized the amendment to the Manual that excludes DED from tenured employment, was actually passed *before* Resolution 17-67, which terminated Minor from the DED position. And Resolution 17-67 explicitly provided that Minor's termination was dependent upon the passage of Resolution 17-66.[55]

---

[52] Board Decision at 5.
[53] *Id.*
[54] *Id.*
[55] Resolution 17-67.

The Court finds that the amendment to the Manual is nevertheless immaterial to the determination of whether Minor was tenured or not,[56] because the position of DED had never been a tenured position, even prior to the passage of the amendment.[57] The Court comes to this conclusion based on the plain language of the Manual's definition of a "permanent full-time employee," the only employment category to which the tenure provision is applicable. A "permanent full-time employee" is one who has satisfactorily completed the probationary period and has been accepted into a 12-month position.[58] Undisputed evidence shows that the DED position is not subject to the probationary period.[59] Hence, the DED is not a "permanent full-time" position as prescribed in the Manual, and thus not subject to the tenure provision.[60] Therefore, the Board's finding of tenure is not supported by

---

[56] The parties dispute whether the amendment to the Manual effectively removed whatever tenure rights Minor may have had. *See* Opening Br. at 18–19; Answering Br. at 22–26. Since the Court finds that the DED has never been a tenured position, that issue is moot, and the Court will not address it in this Opinion.

[57] The Board appeared to hold the opinion that the DED was a tenured position at least before the Manual was amended through Resolution 17-66. The Board stated that it came to this conclusion based on "the clear language of the [Bylaws] and [Minor's] testimony that he was not a nontenured employee." Board Decision at 5. But the Board did not explain how those pieces of evidence supported its conclusion. The Bylaw provision that the Board referred to seems to be the provision which states that the DED "shall be an employee of the Authority." *See* Bylaws, § 3.7. The Board then found the DED position to be a "regular [] employee, i.e., not 'nontenured'." Board Decision at 5. The Board did not explain, and the Court does not see, why the designation as an "employee" logically results in the conclusion that it is also a tenured one. This Court considered Minor's testimony that he was a tenured employee of the Authority. But Minor's testimony, without other supporting evidence, does not constitute "substantial evidence" supporting that proposition.

[58] Manual at 13.

[59] Referee Transcript at 26.

[60] The Court notes that the other employment categories in the Manual are also inapplicable to the DED. Minor contends that since none of the other categories apply to the DED position, it could only be classified as a permanent full-time position. Answering Br. at 21. This argument is

11

substantial evidence, and Minor was a "nontenured" employee as contemplated by the statutory exclusion.

## B. Policymaking

It is plain from the statutory language that, for the exclusion to apply, the position must be both "nontenured" *and* "policymaking." The next step is to determine whether the DED was designated as a policymaking position. This appears to be a purely factual question, and normally, the Court defers to the Board's conclusion as long as it is supported by substantial evidence. However, after reviewing the record, the Court finds that the Board has misapplied the statute in resolving this factual question.

The statutory language is clear that, in order to exclude an employee from receiving unemployment benefits, it must be demonstrated that the employee was employed in a position which is *designated* as a major nontenured policymaking *position*.[61] Thus, according to the statute, the issue should be the nature of the *position* itself. However, the Board, instead of focusing solely on whether the DED

---

misplaced. The Court agrees with the Authority that the best explanation may be that the DED, as well as other Commissioner-appointed positions, were not contemplated by the employment classification section when the Manual was originally drafted. This is supported by the fact that the Manual requires submission of an Application Form for all applicants applying for a position within the Authority, but the requirement does not apply to those Commissioner-appointed officers. The Authority contends that the unique hiring and dismissal process of Commissioner-appointed officers has been a historic, though implicit, consensus within the Authority, and the addition of "Board Appointed Officers" category to the Manual is to clarify that consensus. The Court finds this explanation reasonable.

[61] 19 *Del. C.* § 3302(10)(D)(iii)(V).

12

position was *designated* as policymaking, also devoted a significant portion of its analysis to examining whether Minor had *actually* been engaged in policymaking duties.[62] The latter question, by itself, is not dispositive of Minor's eligibility for the unemployment benefits.

The Board first examined in detail a document which records a July 2016 performance review of Minor, conducted by Minor's then-supervisor, Scott Green.[63] This performance review[64] discussed what Minor had done in the DED position and his strengths and weaknesses in carrying out those duties. The Board found Minor's job function as the DED, "as discussed in the [] performance review, to be managerial in nature and d[id] not involve policymaking."[65] Besides the performance review, the Board also looked into what specific policies, if any, Minor had made on behalf of the Authority. The Board found that the Authority "could not identify any specific examples of [Minor]'s policymaking work" or "identify any [] policies that [Minor] had made."[66] Relying upon the above evidence, the Board found that Minor had not been engaged in any policymaking work, and used that

---

[62] Some of the facts considered by the Board are related to the nature of the DED position. For example, the Board relied upon the specific Bylaw provision that defines the function of the DED position. Board Decision at 4. The Board also took into account Scott Green's testimony regarding the purpose for and circumstances surrounding the establishment of the DED position. *Id.* at 5–6. But other than those few instances, a large part of the Board's analysis centered around evidence about what Minor had actually done with regard to policymaking.

[63] *Id.* at 5.

[64] R. on Appeal 295–98, Sixth (6) Month Review – Supervisors and Managers.

[65] Board Decision at 5.

[66] *Id.* at 6.

finding to support its conclusion that Minor was not excluded from receiving unemployment benefits. However, as discussed above, the real question to be answered under the statute is whether the DED position was *designated* as policymaking from its inception, as opposed to what shifting duties Minor had *actually* performed in that role over the years.[67]

Furthermore, the Board failed to reference key evidence that is relevant to the statutory consideration. One document contained in the factual record, which the Authority heavily relied upon during oral argument, is the job description of the DED position. The job description was adopted by the Commissioners contemporaneously with Resolution 04-04—the resolution that initially established the DED position—so it should be a good indicator of the DED position's duties and functions. However, this job description was notably absent from the Board's discussion of whether the DED was designated as a policymaking position. Hence, by focusing on issues deviating from the statutory consideration and overlooking evidence relevant thereto, the Board misapplied the statute in determining whether the DED was a policymaking position, and its decision on that issue is reversed.

---

[67] The Court notes that the performance review, and the lack of specific examples of policymaking work done by Minor, might still be used as evidence to prove the ultimate issue, i.e., whether the DED position was designated as or intended to be a policymaking position. But it appears that the Board, in its decision, was not using the evidence for that purpose.

## IV. CONCLUSION

Based on the reasons stated above, the Court finds that Minor's DED position was not tenured, and **REVERSES** the Board's July 13, 2018 Decision on that point. The Court also finds that the Board misapplied the statute[68] in its analysis of whether the DED position was designated as policymaking. Thus, the Board's determination that the DED position is policymaking is hereby **REVERSED** and **REMANDED** for further proceedings. Upon remand, the Board, consistent with the statute, shall determine whether the DED *position* was *designated* as a policymaking position, as opposed to whether Minor had conducted any policymaking duties.

**IT IS SO ORDERED.**

_____
Sheldon K. Rennie, Judge

---

[68] 19 *Del. C.* § 3302(10)(D)(iii)(V).